Good morning, Your Honors. Martín Guajardo on behalf of G-1. I think the issue that we confront in this case is multifold. In looking at United States Code 1101A42, I think it's important to recognize the legislative history behind that and what actually brought us full circle to recognizing the ability of a country's government to impose population controls. I think that the facts of our case are somewhat unique. I think maybe this is one of those cases where if the court were to resolve it in a manner favorable to the petitioner, it's going to be a very fact-specific case. It's a situation where you have someone nearly 10 years ago being placed in what we refer to, those in the immigration bar in the agency typically would refer to as exclusion, someone who arrives at the airport and is stopped at the inspection process end because their documents are not in order or simply because they don't have the proper visa. Their inspection, if you will, is deferred, and they are ultimately placed in what back in those days was referred to as an exclusion proceeding. Not a deportation, but an exclusion proceeding. He's scheduled for a hearing for that. And he was scheduled for a hearing. And he fails to show up. And he did. Then he's ordered deported. He doesn't leave. That is correct. As a result of his failure, he's order excluded. Then he gets married. He starts having children. That is correct. Applies for adjustment of status. That is correct. Doesn't show up for that. And that is also correct. If you're right, I mean, the rule would be that if you fail to show up and you start having children, you can stay in the country. Well, I would imagine that we need to look at the case in the context both within the rules, the parameters that are set forth by the agency for an individual who is in exclusion proceedings. What's curious about the agency, and it will be about now 28 years since I first entered on duty with the agency. I spent some years with them as a trial attorney. It's curious that we have these procedures, and unless you're immersed in them, they have a tendency to send you up staircases that have no rooms on the other end, kind of like the Winchester Mystery House down the street. And we have in an exclusion case an individual that can apply for relief, but it's limited to the relief that's available in exclusion proceedings. In this instance, he comes in in 1995, but even if he would have gotten married the next day to a United States citizen, his application for relief under Section 245 would not have been before the immigration judge, the immigration court, if you will. His application for relief would have been relegated solely to the district director. And I think that's pivotal for us even today as we look at this case, as we look at the issues that have come up through the judge, through the Board of Immigration Appeals. He's been here 10 years. He has a United States citizen wife, United States citizen children. And this case does not have to go back in front of an immigration judge. The issue of judicial economy is preserved. We don't have to go essentially back and brief anything else in front of the Board of Immigration Appeals. This case, if I may for a moment, can be handled exclusively by the district director simply because of the myopic nature of the regulation that provides for the adjustment of status. Meaning, in short, if you're in exclusion, you never typically, 99 percent of the time, you will never go in front of the judge for your application for adjustment. You are going to go directly to the district director. The charging document that was fashioned back in 1995 up until the change in April 1st, 1997, with the Illegal Immigration Reform and Immigration Responsibility Act, essentially provides that if you're charging documents, there are two forms, an I-110 and an I-122. These forms relegate the form of relief for adjustment of status under Section 245 only to the district director. He is the one to consider the application for adjustment. He is the one to consider the application. Is there anything we can do about that? Shouldn't you be talking to Congress? Well, the short answer, I'm not certain what this circuit will do. We've seen what a couple of other circuits have recently done with regards to individuals who are now, we now refer to them as arriving aliens as opposed to those that are admitted and inspected. We've had, as the court knows already, Section 245-I, which provided some relief for individuals that were coming into the country without the proper documents. Essentially, Congress took the step of saying, look, put your $1,000 on the table. I'll turn a deaf ear and a blind eye to the fact of however the circumstances were that you came into the country. You didn't get a stamp on your documents to come in, but give us the $1,000 and we'll process your application and get it in line. So that was something that was an ameliorative measure that was provided for individuals, such as this petitioner before the court. This petitioner, he caused his application through his wife, which then would have been a preference petition. She was a permanent resident under 203-A2. That preference category allowed him to establish a priority date. That priority date under 245-I essentially allows for him, even today, to knock on the door of the district director and take his documents, take his wife and say, here we are for the application for adjustment of status. I think now saddled with the decision that he's been excluded and deported because the judge initially found that 208 would not be available to him simply because he didn't file within the particular time, and this counsel for the government points out that issue doesn't come up here because the board didn't look at it. But what we have is we have a review of the 208, of the 241-B3-B, of the CAT claim, all done by the immigration judge here in San Francisco. And since at the time he left China he wasn't married, the time he left he had no children. That all happened post-departure, right? And we now try to find whether under a CAT claim, under the Article 3 of the Geneva Convention, can we now show that he could sustain some form of punishment in China in being returned. I think that if we were to do anything in this case today, it would be a matter of sending the case back to the immigration judge, recognizing that the record was not fully developed as to those issues because the judge looked at this case initially and said, well, wait a minute, this is what I see. You come in 1995, later on you file this motion, you're back in front of me after what the court already knows is the facts. She said, well, let me proceed and I'll go ahead and take a look at what you have. I'm not going to find that you have, that you face past persecution or that you even would suffer future persecution on account of, notwithstanding that you have the United States citizen spouse. And I think one of the other factors. We've got about a minute and a half if you want to reserve any time. I'm going to conclude. I'll just conclude with the following. I think that at times when you bring cases such as these, they're difficult cases to grapple with. We're dealing with individuals whose entire life, their livelihood, and I think as someone who had much more experience than I've ever had, I think coined the phrase, you take away from a person everything that makes life worth living. And in this instance here, I think that you have someone who has dedicated himself to bringing up his children here, taking care of his home, his wife. I think he tried to get back, tried to get a document. The Chinese government wouldn't even talk to him. That was 1998. That was six years ago, seven years ago. And now we have someone that, but for this court stepping in, sending this case back, letting the Immigration Service take it on and look at this case anew, he'll be relegated to an order of exclusion and deportation and may continue to be in limbo for an indefinite period of time. I think we need to do something to move the process along, just as a matter of what's reasonable and what's right. Thank you. Thank you very much. Morning. Good morning. Alison Igo, representing the Attorney General. I disagree with my colleague in what is before this court. The only issue before this court is whether the immigration judge's decision and the board's affirmance of that decision denying Mr. Wong asylum because he failed to prove a well-founded fear of future persecution was correct, whether there is substantial evidence in the record to support that decision and whether Mr. Wong has pointed to evidence that would compel a different decision. If we decide that it does compel a different decision, where does it go? I gather your opponent says, we can resolve everything here. Would you say even if you lose here, it has to be remanded? Yes, I would say that, because there are two parts of the asylum statute. One, determining whether somebody is statutorily eligible, and that is to prove the elements whether you either pass persecution or fear of future persecution. And the second step is whether the Attorney General decides to grant asylum within his – and that's a decision within his discretion. So that second part, the court cannot decide. And that's an issue that even if this Court decides that there's evidence compelling a different conclusion, then you would have to send it back for the discretionary part of the decision. This case, however, and I understand Mr. Wong's situation. However, Mr. Wong's situation is totally of his own making. He applied for adjustment of status based on his wife's citizenship. He was given two opportunities. He was given two separate interview dates, neither of which he showed up for. There's no evidence in the record to explain that. He had already had – he had already failed to show up for his original exclusion hearing, and now he had a second and a third chance, and he didn't show up for either one of those. And he now stands in front of this Court, and he's asking this Court to overlook the requirements for asylum and sort of give a wink and a nod to that so that he can get back in front of the immigration judge and apply for adjustment of status. But when you look at this record and what is before this Court, this Court can't send this case back. The only issue here is whether he proved a fear of future persecution. There's no issue about past persecution. He – that's – that is conceded. He has to show that he has a genuine fear and that his fear is reasonable. And I submit to this Court this – the record more than compels a conclusion that he proved neither one of those. First, in fact, I think his lawyer's presentation here suggests to this Court that asylum is a way for him to get back so that he can revisit his adjustment of status based on his – on his marriage. But – Are you saying that that's not available even if it does get remanded? No, I'm not saying it's not available.  And Mr. Guarardo and I spoke earlier about looking into whether it's available notwithstanding what goes on before this Court. I will ask – because I understand that this Petitioner is in a very difficult position. He has asked for documents to return to China, and China wasn't forthcoming. They wouldn't give him documents. So he is in a difficult situation. Even if this Court denies his petition, he doesn't go back because he doesn't have travel documents. China so far hasn't accepted him. So he's going to be here either way. So we have discussed – I mean, I'm willing to go back to the agency and see if there is something that can be done. But that's not a question that's before this Court. This Court only looks at whether he proved a case for asylum. And his case for asylum was based on his fear – his claimed fear of sterilization if he is sent back to China. And that fear is based on his – on his having two children. And what is absent from this record, and I believe from the case law in total, is that there is any support, either in the law or in any cases, that a citizen of the – of China who is married to an American citizen here who has two American children will face a threat of sterilization if he returns to China. Isn't there a Third Circuit case that suggests that that's a realistic concern? I'm – I'm not familiar with the Third Circuit case. I mean, and I – it may be which – G-U-O. I'm not sure how you pronounce it. Guo, Guo, Guo. I don't – I mean, I will certainly look at it. But, I mean, in this case, on this record, he submitted nothing to prove that he – that his two children – and, in fact, I would submit that the expert witness – he was given two months to bring in an expert witness to prove that the law in China would treat his children the same way that they would treat two Chinese children. And, in fact, I would submit that the expert who – who the immigration judge denied her testimony as an expert witness. But what was very interesting about that woman's testimony was how she, on her resume, how her children were treated when she went back. She claimed that children who were born here are not treated the same as Chinese children, suggesting that the Chinese government has a different way of dealing with foreign-born children than – than children who are citizens of China. They pay a much higher price to go to school. His wife would not be able to work, and that's how they prevent – that's how they deal with foreign-born children. That is very different than sterilizing the parent of – of foreign-born children to prevent them from having any more children. And on this record, there is absolutely nothing in this record that this man, based on his – on having two children here, would face that threat. And, in fact, he sought himself, knowing that his wife was pregnant with a second child, he sought documents. It was at that time that he sought a visa or travel documents from China to return to China, really supporting the immigration judge's conclusion that his fear just is not reasonable and that his fear or that his alleged fear is just a way to get him back into the court. And I would suggest to this Court that that is not – I mean, that is really unfair to – to people who have true asylum claims and who come before this Court and are really threatened with persecution in another country. Could you tell us a little more about the practicalities of this? If he won't – if China won't take him, then what happens? He'll remain here. And does he get a work permit and that kind of thing? Probably no, because he – he has a final order of exclusion. So he – I don't believe somebody in his situation will have a work permit. In fact, I can pretty much say wouldn't, because he's not – he would not be in legal status. He would be like the other 10 million people who – in this country who work without legal work permit. And I don't know that in the future we have numerous people in that type of a situation, His Court decided a case, Ma, that went to the Supreme Court, people who have final orders of deportation to Vietnam, Laos, and Cambodia who we cannot remove and who were released from custody. And they would be in the same position because they have a final order of deportation. So I imagine at some time there would have to be a legislative fix for people like that. But he – you know, technically, the agency could probably remove him to another country if they could find a country that would accept him, but that's fairly unlikely. So as I said earlier, he's in limbo, basically. But the only question before this Court is if on this record he proves that there's a real threat of persecution based on having two children who are not – who are clearly not citizens of China, whether those children would be counted against them. It's not even clear that those children would be allowed back in the country. Would you want us – excuse me, Judge Heather. Go ahead. I was going to ask you if the fear of persecution relates to the treatment, assuming there would be ill-treatment of his children in China, or is it treatment of himself? Well, the record below, I think what happened was that, you know, the fact that there was no past persecution in Mr. Wong's situation, at first he – there was some movement about, you know, in the issue about who this was relating to, Mr. Wong first claimed that he feared persecution and admitted that his wife would not be subject to sterilization because she is a United States citizen. But he then changed the theory, I think sort of evolved, frankly, and he asked permission to bring in an expert witness to prove that she would be treated as a citizen of China. And although he was given the opportunity, he did not bring in any witnesses. Although the witness he did bring in talked about discrimination against United States children, that they would have to pay a very high fee for education, that when they got older, they wouldn't be able to work there, that his wife wouldn't be able to work because she's a United States citizen, that she wouldn't be given a work permit. But that is all – those are questions of economics. I mean, this Court has recognized that that type of discrimination doesn't rise to the level of persecution. I mean, even his witness, she returned with her two children to China, and although – the only thing that she was able to say was she was forced to pay much higher fees. And that happens state to state, you know. Would you want an opportunity to, first of all, take a look at this Guo case that was decided by the Third Circuit? Yes, I would like to take a look at Guo. I know the case that you're talking about. I'm – unfortunately, I did not have the opportunity. And I would like to see the case. And also maybe to check with the agency to see what – would you like us to withhold submission? I'm sorry. Would you be interested in having us withhold submission of the case until you can confer with the agency? I wouldn't expect the Court to do that until I can see, because, I mean, I certainly – I understand that this is an unusual case, and it's notwithstanding his failure to appear. I mean, he's in a little bit of a bind in it. And I would like to see if they would agree to reopen the case and allow it to go back. So I would agree to it being held in submission. Thank you. Thank you very much. Thank you, Ms. Agnew. Mr. Carter, do you have anything else you'd like to add? No, Your Honor. Would you be interested also in having us hold off on the case until counsel can look in to see what they can do for you? Absolutely. And maybe also brief this other case that came out. Thank you. Did your research disclose the Guo case? I'm not familiar with the case. Okay. I'll take a look at it. It's a Third Circuit case that was amended and decided in December of last year. Do you have a pencil handy? I can give you the cite to give you a head start on it. It's 386 Fed Third 556. Do you want to jot that down? You're welcome to. 386 Fed Third 556. Thank you. Thank you very much. We'll defer submission on that for the time being. 0371760, Singh v. Ashcroft is submitted on the briefs. The next case to be argued is 0372233, Cower v. Ashcroft. Each side has ten minutes.
judges: Alarcon, Siler , Silverman